USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 7, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

JEFFREY CAMP and JC REAL ESTATE FUND, LLC,

                Plaintiffs,

-v-

ROBERT BERMAN, ROBERT WONG, and AVON ROAD ROCK HILL, LLC,

                Defendants.

------------------------------------------------------------------X

ROBERT BERMAN,

                Counterclaim-Plaintiff,

-v-

JEFFREY CAMP, CINIUM FINANCIAL SERVICES CORPORATION, JOEL ASEN, JAMES ROBERTS, MICHAEL MICHIGAMI, and BDO USA, LLP,

                Counterclaim-Defendants.

------------------------------------------------------------------X

14-cv-1049 (KBF)

MEMORANDUM DECISION & ORDER

KATHERINE B. FORREST, District Judge:

Before this Court are motions by counterclaim-defendants to dismiss all counterclaims against them. (ECF Nos. 43, 46.) For the reasons set forth below, the counterclaims are dismissed only as to BDO USA, LLP ("BDO").

The standards for dismissal pursuant to Rule 12(b)(6) are well known. The Court will not repeat those standards here but does apply them in all respects. It takes all allegations in the counterclaims as true for purposes of this motion, and draws all reasonable inferences in favor of counterclaim-plaintiff Robert Berman

("Berman").  See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

In his counterclaims, Berman alleges that counterclaim-defendants breached his employment agreement with Cinium Financial Services Corporation ("Cinium") when they fired him in March 2014.[1]  According to Berman, he had a binding employment agreement providing for limited bases for a for-cause termination.  He alleges further that counterclaim-defendants fabricated a claim of "misappropriation" to fit within the termination provision.  According to Berman, his termination was part of a scheme pursuant to which counterclaim-defendants made a "self-interested grab for corporate assets." (Amended Answer with Counterclaims ("Counterclaims") ¶ 3, ECF No. 13.)

Counterclaim-defendants have urged several separate bases for dismissal of the counterclaims.  Their first basis for dismissal is that, properly construed, the counterclaims actually arise under a different contract, a Securityholders' Agreement.  They allege that all claims pursuant to that contract must be brought in Delaware.[2]  The Court disagrees with this argument.  There is no doubt that on their face, the counterclaims assert that counterclaim-defendants breached Berman's employment agreement when they terminated him.  The employment agreement does not require all actions to be brought in Delaware; assuming subject-

---

[1] Cinium's board is alleged to have made the decision in October 2013 but it only became effective in March 2014.

[2] Counterclaim-defendants also argue for dismissal on the basis of forum non conveniens.  There are now so many claims involving the same parties before this Court that dismissal on that basis is not merited.

2

matter jurisdiction, claims pursuant to this agreement may be brought in this Court.

It is certainly true that in the counterclaims Berman asserts that a motivating reason for his termination may have been to "call" his shares under the Securityholders' Agreement. (See Counterclaims ¶¶ 75-84.) He also avers that no call has yet been made. This Court notes that should he intend to litigate a claim in that regard, that claim could not be brought before this Court. Jurisdiction for that claim would lie in Delaware pursuant to Section 18(b) of the Securityholders' Agreement.

Counterclaim-defendants' second argument follows from their first: since they construe the claims at issue to concern Cinium securities, they assert that Berman lacks standing to assert such claims as he is not personally an owner-of-record of such securities (his interest in Cinium comes through certain companies which he controls). For the same reasons as discussed above, this argument lacks merit. Berman's claims are for breach of a personal employment agreement—a contract as to which he certainly has standing.

Counterclaim-defendants' third argument is that the first counterclaim, asserted against Cinium only, is procedurally improper as Cinium is not a party-plaintiff in the initial suit. Thus, the claims as to Cinium are initial claims and not counterclaims. Counterclaim-defendants are correct that Cinium was not an initial party-plaintiff and that, as a technical matter, Berman's claim as to it is not a "counterclaim." Whether dismissal of the claim must follow is, however, a more

complicated matter.  The answer to that question implicates various rules designed to achieve judicial and litigation efficiency.

Rule 13 of the Federal Rules of Civil Procedure govern the assertion of counterclaims.  Subpart (h) applies when an additional party is named as a counterclaim-defendant.  That provision states that Rules 19 (governing joinder of necessary parties) and 20 (governing permissive joinder) determine whether such joinder is appropriate.  Put otherwise, so long as the provisions of either Rule 19 or Rule 20 are met, a counterclaim-plaintiff may join an additional party as a counterclaim-defendant.  This Court therefore turns to those rules for guidance.  The Court need not determine whether Cinium is a necessary party under Rule 19 as it is clear that it is appropriate to join Cinium as a permissive party at the very least.

Rule 20 allows for permissive joinder of defendants when "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and there is at least one question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2).  Berman's counterclaims specifically allege that Cinium, as a corporate entity acting through its directors and officers (including Camp, Asen, Roberts, and Michigami), engaged in a scheme to terminate him contrary to the protections afforded by his employment agreement.  There are specific allegations as to each individual and entity in this regard.  Camp is alleged to be at the center of the scheme, and the actions of all other additional

4

counterclaim-defendants is alleged to arise out of the same series of occurrences. The standards of Rule 20 are met.[3]

The same is not true, however, with regard to BDO. The Court deals with BDO's specific arguments separately below.

As a fourth argument for dismissal, counterclaim-defendants argue that Delaware law precludes assertion of the claims as stated. According to counterclaim-defendants, under Delaware law, directors cannot be held liable for tortious interference with contract by causing their company to breach a contract through actions taken in their official capacities. Directors may only be held liable when their actions exceed the scope of their authority. These statements of the law are correct, though it is not clear that Delaware law applies. Even assuming for purposes of this motion that it does, the allegations in the counterclaims specifically assert that the directors exceeded the scope of their authority and engaged in a scheme to further their own self-interest. The Court certainly understands that

---

[3] The Court is aware that courts are split as to whether Rule 13(h) can be used to assert a counterclaim solely against a non-party (where there is another counterclaim against an existing party). Compare, e.g., Sony Fin. Servs., LLC v. Multi Video Grp., Ltd., No. 03CIV.1730(LAK)(GWG), 2003 WL 22928602, at *4 (S.D.N.Y. Dec. 12, 2003) (Rule 13(h) permits "additional parties to be joined only where an opposing party is also a party to the counterclaim." (citations omitted), with Various Markets, Inc. v. Chase Manhattan Bank, N.A., 908 F. Supp. 459, 471 (E.D. Mich. 1995) (Rule 13(h) applies when a counterclaim against new parties is asserted at the same time—in the same pleading—as counterclaims against at least one existing party). Rule 1 of the Federal Rules of Civil Procedure provides that the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Here, dismissing the counterclaim against Cinium makes very little sense, since Berman could then file a new diversity action against Cinium and designate it as related to the instant action. This would result in a waste of resources and frustrate the speedy resolution of this action. Accordingly, the Court deems Berman to have properly asserted a claim against Cinium.

counterclaim-defendants vigorously dispute this assertion—and they have mustered in response a series of facts from which they argue that any inference to the contrary is unreasonable.  At this stage of the litigation, however, this Court is constrained to take all allegations set forth in the counterclaims as true, and to construe all inferences in favor of counterclaim-plaintiff.  These standards preclude dismissal as a matter of law at this time.  Whether it will turn out that the proof falls short of supporting claims against the individuals—and whether the choice of law clearly makes a difference on a further developed record—are questions for another day.  It may be that as the facts develop, it will turn out that all actions taken by the directors were no more than the regulation of internal affairs of a corporation, and/or that there is no evidence of actions taken in pursuit of self-interest.  On a fuller record, the Court would certainly entertain an appropriate motion.

Finally, counterclaim-defendants argue that Berman has failed to allege any injury in fact or damages as a result of his termination.  In both his first and second counterclaims, Berman alleges that he has in fact been damaged.  His prayer for relief requests compensatory and punitive damages.  In the context of a breach of contract, no more than this is required.  Rule 8 is satisfied.

BDO's Specific Arguments

Included in Berman's counterclaims is the assertion that Cinium's auditor, BDO, tortiously interfered with his employment contract.  A BDO partner is alleged to have actively assisted in the fabrication and dissemination of information

regarding Berman that he knew to be false. (See Counterclaims ¶¶ 48, 60.) In this regard, BDO is alleged to have prepared a report for the audit committee based on information regarding RH Land that the BDO partner knew or should have known, from information obtained during prior audits, was false. According to Berman, the BDO report contained assertions that he had concealed information, leading BDO to threaten to resign if Berman was not removed. (Id. ¶¶ 62-64.) According to Berman, this was an "attempt" to have BDO do the Cinium officers' "dirty work." (Id. ¶ 65.) The counterclaim against BDO fails.

    First, there are no allegations supporting "but for" causation for the breach of the employment contract as to BDO. See Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 828 (2d Cir. 1990) (a tortious interference claim "must allege that 'there would not have been a breach but for the activities of defendants'" (citation omitted)). Throughout the counterclaims, Berman asserts that the four director counterclaim-defendants (the "directors")—Camp, Asen, Roberts, and Michigami—conspired to fire him by trumping up a misappropriation charge regarding monies paid for a worthless interest in RH Land. (See Counterclaims ¶¶ 1, 47, 51, 52, 54-59.) According to Berman, his termination was "predetermined" by the directors. (Id. ¶¶ 55, 59.) While Berman alleges that the directors solicited BDO's assistance in furtherance of this scheme (id. ¶¶ 48, 60), the plan to fire Berman allegedly originated at least as early as 2011 (see id. ¶ 49), two years before BDO issued its audit report. Thus, according to Berman's own factual allegations, the audit report, and any claims within it, was solicited to support a predetermined termination—

7

that is, one that was planned before BDO's involvement.  See RSM Prod. Corp. v. Fridman, 387 F. App'x 72, 75 (2d Cir. 2010) (affirming a dismissal of a tortious interference claim where another party allegedly "took to obstruct performance of the contract before any alleged interference by [the defendants]"); Sharma, 916 F.2d at 828 (affirming a dismissal of a tortious interference claim for failure to plead "but for" causation where there were allegations that the breaching party was "motivated by profit"); Granite Partners, L.P. v. Bear, Stearns & Co. Inc., 17 F. Supp. 2d 275, 294 (S.D.N.Y. 1998) (where a party "was predisposed to breach its contractual obligations," "the allegedly interfering party cannot be the 'but for' cause of the breach").  The assertions in the report, and BDO's threats to resign, might have added color and credibility to the termination, but Berman has not alleged any facts suggesting that the particular assertions and threats were a "but for" cause of this predetermined termination.[4]

In addition, there is no allegation that BDO knew about the employment agreement (although Berman argues in response that it did, those facts are not in the claims), and even if it knew of the agreement, there is no allegation that BDO knew of the specific termination provision.  In the absence of such knowledge, this claim fails.  See Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC, 300 F. App'x 48, 50 (2d Cir. 2008) (affirming the dismissal of a tortious interference claim where

---

[4] Specifically, there are no allegations suggesting that had BDO refused to participate in the alleged scheme, the directors would not have hired another external auditor or proceeded to terminate Berman anyway.

8

the complaint failed to allege defendant's knowledge of the actual contract that was alleged to have been breached).

## Conclusion

Accordingly, the motion to dismiss the counterclaims as to BDO is GRANTED. The separate motion to dismiss the counterclaims as to the remaining counterclaim-defendants is DENIED. The Clerk of Court is directed to terminate the motions at ECF Nos. 43 and 46.

SO ORDERED.

Dated:     New York, New York
           April 7, 2015

*[signature: K. B. Forrest]*

_____
KATHERINE B. FORREST
United States District Judge