```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____             │
│ DATE FILED: June 25, 2015            │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                           :

JEFFREY CAMP and JC REAL ESTATE FUND, :
LLC,                                  :
                                           :

                         Plaintiffs,    :
                                           :

             -v-                          :

ROBERT BERMAN, ROBERT WONG, and AVON :
ROAD ROCK HILL, LLC,                  :
                                           :

                         Defendants.   :
-------------------------------------------------------------------X
                                           :

ROBERT BERMAN,                        :
                                           :

             Counterclaim-Plaintiff,   :

             -v-                          :        14-cv-1049 (KBF)

JEFFREY CAMP, CINIUM FINANCIAL         :
SERVICES CORPORATION, JOEL ASEN,       :
JAMES ROBERTS, MICHAEL MICHIGAMI, and :
BDO USA, LLP,                          :

             Counterclaim-Defendants.  :
-------------------------------------------------------------------X
                                           :

CINIUM FINANCIAL SERVICES              :
CORPORATION,                           :

             Counterclaim-Plaintiff,   :

             -v-                          :

ROBERT BERMAN,                         :
             Counterclaim-Defendant.  :
------------------------------------------------------------------- X

```
-------------------------------------------------- X
                                                   :
TOW SUR, LLC, REL-REM HOLDINGS, INC.,              :
TROMBONE, LLC,                                      :
                                                   :
                        Plaintiffs,                :
                                                   :
             -v-                                   :          14-cv-2705 (KBF)
                                                   :
ROBERT BERMAN, ROBERT WONG, and                    :
DONALD APPEL,                                       :
                                                   :
                        Defendants.                :
-------------------------------------------------- X
JEFFREY CAMP and JC PRIVATE EQUITY                 :
FUND I, LLC,                                        :
                                                   :
                        Plaintiffs,                :
                                                   :
             -v-                                   :
                                                   :
ROBERT BERMAN, ROBERT WONG, DONALD                 :
APPEL, and DENNIS VACCO,                            :
                                                   :
                        Defendants.                :
-------------------------------------------------- X          15-cv-2586 (KBF)
ROBERT BERMAN,                                      :
                                                   :
                 Counterclaim-Plaintiff,           :
                                                   :
             -v-                                   :          OPINION & ORDER
                                                   :
JEFFREY CAMP, CINIUM FINANCIAL                     :
SERVICES CORPORATION, JOEL ASEN,                   :
JAMES ROBERTS, MICHAEL MICHIGAMI, and              :
BDO USA, LLP,                                       :
                                                   :
                 Counterclaim-Defendants.          :
-------------------------------------------------- X
```

KATHERINE B. FORREST, District Judge:

Before the Court is plaintiffs and counterclaim-defendants' ("plaintiffs") renewed letter-motion to compel Joseph Bernstein, Esq. ("Bernstein") to provide further deposition testimony.  (ECF Nos. 250, 257.)  Plaintiffs contend that Bernstein was improperly instructed not to answer questions regarding a host of non-privileged factual matters.  Most of these questions relate to the so-called "Miller transaction"—a deposit of $2.75 million to Upper Hudson Holding, LLC ("Upper Hudson"), which is now Cinium, from an individual named William Miller ("Miller").  In particular, plaintiffs contend that Bernstein was improperly instructed not to answer questions concerning the facts set forth in his October 21, 2013 letter to counterclaim-defendants (ECF No. 217-2)—in which Bernstein suggested that the tax treatment of the $2.75 million was proper and indicated that (1) Upper Hudson's tax returns had been fully audited by the IRS, (2) the IRS examiner had recommended no change in the returns, and (3) the returns had been prepared and reviewed by accountants in New York in Atlanta.  Plaintiffs also assert that certain testimony concerning RH Land and Glen Wild was improperly blocked.

There have been two rounds of motion practice on this issue.  In a prior round, resolved by Order dated June 1, 2015, the Court granted plaintiffs' motion and compelled Bernstein to provide further deposition testimony.  On defendants' request (ECF No. 238), the Court held an in-person conference with the parties to discuss the Court's ruling.  At the conference, the Court vacated the June 1, 2015

Order as based on a misunderstanding of the relevant attorney-client relationship. The Court now understands that Bernstein wrote the October 21, 2013 letter in his capacity as counsel for Robert Berman ("Berman")—not for Upper Hudson or Cinium. The Court has revisited plaintiffs' motion to compel further deposition testimony from Bernstein with the proper attorney-client relationship in mind.

For the reasons set forth below, plaintiffs' motion is GRANTED IN PART and DENIED IN PART. Plaintiffs may re-depose Bernstein on any facts except those (if any) learned (1) exclusively through confidential communications <u>with Berman himself</u> in the course of providing <u>Berman himself</u> with legal advice, or (2) in connection with anticipated or actual litigation, as no showing of substantial need has been made.

I.     LEGAL STANDARDS

    A.     <u>Attorney-Client Privilege</u>

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." <u>United States v. Mejia</u>, 655 F.3d 126, 132 (2d Cir. 2011) (citation omitted). The underlying purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981); <u>see also id.</u> at 390 ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."

4

(citations omitted)).  However, the value of protecting attorney-client confidentiality must be balanced with the competing value of full disclosure of the relevant facts— absent which "confidence in the fair administration of justice would cease to exist." In re Six Grand Jury Witnesses, 979 F.2d 939, 943 (2d Cir. 1992) (citation omitted). "Because the attorney-client privilege remains an exception that may withhold relevant information . . . , it may be invoked to hold secret only those communications made in confidence to a lawyer to obtain legal counsel that would not have been made without the existence of the privilege."  Id. (citations omitted); see also In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973) (since "the privilege stands in derogation of the public's 'right to every man's evidence,' and as 'an obstacle to the investigation of the truth' . . . '[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle'" (citations omitted)); Mejia, 655 F.3d at 132 (courts apply the attorney-client privilege "only where necessary to achieve its purpose" and "construe the privilege narrowly because it renders relevant information undiscoverable" (citation and internal quotation marks omitted)).  "The party asserting the privilege must establish the essential elements of the privilege."  United States v. Constr. Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996) (citations omitted).

As a general matter, the attorney-client privilege attaches only to communications between lawyers and their clients.  Mejia, 655 F.3d at 132.  This principle is subject to a narrow exception: the privilege may attach to "communications to others when the purpose of the communication is to assist the

attorney in rendering advice to the client." Id. (quoting United States v. Adlman, 68 F.3d 1495, 1499 (2d Cir. 1995)) (internal quotation mark omitted).  For example, the Second Circuit has "extended the application of the privilege to a communication between a client and an accountant, reasoning that . . . 'the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit.'" Id. (quoting United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)).  However, this exception is narrow—and does not extend to all "communications that prove important to an attorney's legal advice to a client." Id. (quoting United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999)) (internal quotation marks omitted); see also Hickman v. Taylor, 329 U.S. 495, 508 (1947) ("[T]he protective cloak of [the attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation.").

The attorney-client privilege "attaches not to the information but to the communication of the information." United States v. Cunningham, 672 F.2d 1064, 1073 n.8 (2d Cir. 1982).  Thus, the client may be examined as to any fact—but may not, without a waiver, be compelled to disclose whether or not he communicated that fact to his attorney. Id.  Likewise, the attorney may not be examined as to confidential communications from his client and facts learned from such communications. Id.  However, "pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in

order to obtain more informed legal advice." <u>Fisher v. United States</u>, 425 U.S. 391, 403-04 (1976) (citations omitted).

  B.  <u>Work-Product Privilege</u>

  The work-product privilege is both "distinct from and broader than the attorney-client privilege." <u>United States v. Nobles</u>, 422 U.S. 225, 238 n.11 (1975). This privilege, codified in part in Rule 26(b)(3) of the Federal Rules of Civil Procedure, "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." <u>In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002</u>, 318 F.3d 379, 383 (2d Cir. 2003); <u>see also</u> <u>Constr. Products</u>, 73 F.3d at 473 (to invoke the work-product privilege, "a party generally must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation" (citations omitted)). To compel production of materials prepared by or for an attorney in anticipation of litigation, a party must show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3); <u>see also</u> <u>In re Grand Jury Subpoenas</u>, 318 F.3d at 383.

  "The logic behind the work product doctrine is that opposing counsel should not enjoy free access to an attorney's thought processes." <u>In re Steinhardt Partners, L.P.</u>, 9 F.3d 230, 234 (2d Cir. 1993) (citations omitted). The work-product doctrine provides the attorney with a zone of privacy in which he can analyze and prepare his client's case without unnecessary intrusion by an adversary. <u>See</u> <u>id.</u> (citation omitted); <u>United States v. Adlman</u>, 134 F.3d 1194, 1196 (2d Cir. 1998); <u>In re Grand</u>

Jury Proceedings, 219 F.3d 175, 190 (2d Cir. 2000).  While the doctrine "is more deeply concerned with the revelation of an attorney's opinions and strategies"—and "the burden of showing substantial need to overcome the privilege may be greater as to opinions and strategies than as to facts"—the Second Circuit has noted that factual information discovered in the course of an investigation may also be protected as work product.  In re Grand Jury Subpoena Dated Oct. 22, 2001, 282 F.3d 156, 161 (2d Cir. 2002).  "It is an unsettled question whether the work product immunity protects the identities of those persons interviewed by an attorney or his agent in anticipation of litigation."  US Bank Nat. Ass'n v. PHL Variable Ins. Co., No. 12 CIV. 6811 CM JCF, 2013 WL 5495542, at *9 (S.D.N.Y. Oct. 3, 2013) (collecting cases).

The work-product doctrine "generally does not shield from discovery documents that were not prepared by the attorneys themselves, or their agents, in the course of or in anticipation of litigation."  Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991, 959 F.2d 1158, 1166 (2d Cir. 1992) (citation omitted).  "However, where a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected."  Id. (citations omitted).  Thus, in Sporck v. Peil, 759 F.2d 312 (3d Cir. 1985), the Third Circuit held that "a folderful of documents" that defendants' attorney had culled for review constituted work product because "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal

important aspects of his understanding of the case." Id. at 316 (citation omitted).

The Second Circuit has accepted the so-called "Sporck principle" but characterized

it as creating only a "narrow exception" to the principle that documents do not

acquire protection simply by virtue of a transfer to an attorney. Matter of Grand

Jury Subpoenas, 959 F.2d at 1166-67 (citing Gould Inc. v. Mitsui Min. & Smelting

Co., 825 F.2d 676, 680 (2d Cir. 1987)). The Sporck exception applies only where

there is a real concern that an attorney's thought processes as to pending or

anticipated litigation would be exposed—and may not apply if the files from which

the documents were obtained by the party asserting privilege were not available or

reasonably accessible to the opposing party. See id. at 1167.

## II.     DISCUSSION

Consistent with these legal principles, the questions that may be asked—and

potentially objected to—at Bernstein's deposition could be classified into three

categories:

- Category # 1: Questions as to facts that Bernstein learned exclusively from

    confidential communications with Berman, his client, in the course of

    providing legal advice to Berman.

- Category # 2: Questions as to facts that Bernstein learned from third parties

    not in connection with anticipated or actual litigation (but perhaps in

    connection with providing Berman with legal advice).

- Category # 3: Questions as to facts that Bernstein learned in connection with

    anticipated or actual litigation.

The first category of information is protected by the attorney-client privilege and is off-limits to plaintiffs: Bernstein may not be questioned as to any confidential communications with Berman—or as to any facts that he learned <u>solely</u> from such communications.  <u>See</u> <u>Cunningham</u>, 672 F.2d at 1073 n.8.  Importantly, however, this protection does not extend to any facts learned from non-privileged documents that Berman may have provided to Bernstein.  <u>See</u> <u>Fisher</u>, 425 U.S. at 403-04.

The second category of information—facts that Bernstein learned from third parties not in connection with anticipated or actual litigation—is not cloaked with any privilege and is subject to discovery.  Bernstein must answer plaintiffs' questions as to facts that fall within the second category even if he learned these facts while representing Berman and in the course of providing him with legal advice.

The third category of information—facts that Bernstein learned in connection with anticipated or actual litigation—is protected as work product and is not discoverable unless plaintiffs demonstrate that they have a "substantial need" for the materials and cannot obtain them, or "their substantial equivalent," through alternative means without undue hardship.  <u>See</u> Fed. R. Civ. P. 26(b)(3); <u>see also</u> <u>In re Grand Jury Subpoenas</u>, 318 F.3d at 383.  Here, plaintiffs have not made any showing of substantial need or inability to obtain.  Accordingly, to the extent Bernstein learned any facts in preparing for—or in the course of—<u>litigation</u>, he may assert work-product privilege as to those facts.  However, subject to the <u>Sporck</u>

exception, Bernstein may not assert work-product privilege as to documents that were not prepared by him or on his behalf.

A few examples to illustrate these principles:  There is no indication that Bernstein researched and prepared the October 21, 2013 letter in connection with any litigation.  Thus, assuming his information in this regard is based on his review of documents or consultations with third parties, he must disclose the factual bases for his representations that Upper Hudson's tax returns had been fully audited by the IRS, that the IRS had recommended no change in the returns, and that the returns had been reviewed by accountants in New York and Atlanta.  In particular, Bernstein must disclose the fact and substance of any communications with the IRS (and other non-clients) about the returns, any non-privileged documents that show that the IRS audited the returns or recommended no change, and the identities of any accountants who reviewed the returns.

Similarly, Bernstein must disclose all facts relating to Miller and the $2.75 million deposit to Upper Hudson—so long as he did not learn such facts in connection with actual or anticipated litigation, or <u>exclusively</u> through confidential communications with Berman in the course of providing Berman with legal advice. Thus, if Bernstein spoke to Miller himself—or to any third parties about Miller—he must disclose the fact and substance of those conversations.  Likewise, if Bernstein learned any facts about Miller from reading public or third-party documents, he must disclose such facts—even if he had received the documents from Berman in the course of providing Berman with legal advice.

11

Finally, as to the RH Land/Glen Wild issue, assuming Bernstein's information in this regard was not acquired in connection with any litigation, Bernstein must disclose any communications with Sam Eisenberg or other third parties about RH Land.  Bernstein must also disclose any facts relating to Glen Wild's bid—including the nature of the $25 million claim against the Federal Reserve and the Maiden Lane trust—so long as he did not learn these facts exclusively through confidential attorney-client communications or in connection with actual or anticipated litigation.

These examples are not intended to serve as a comprehensive list of permissible questions—but rather to illustrate the legal principles governing the attorney-client and work-product privileges and to provide the parties with guidance as to the kinds of facts that are not protected by these doctrines.

III.   CONCLUSION

For the reasons set forth below, plaintiffs' motion to compel further deposition testimony is GRANTED IN PART and DENIED IN PART.  Plaintiffs may re-depose Bernstein consistent with the guidelines above.

SO ORDERED.

Dated:      New York, New York
            June 25, 2015

_____
      KATHERINE B. FORREST
      United States District Judge

12